IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLTON REED TIPTON, | § § § | |
| *Plaintiff,* | § § | SA-21-CV-00060-FB |
| vs. | § § § | |
| BOBBY LUMPKIN, DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE-INSTITUTIONS DIVISION, | § § § § § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the above-styled cause of action, which was referred to the undersigned for all pretrial proceedings on November 18, 2021 [#37]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that this case be **dismissed** for mootness.

**I.  Background**

This action challenges a grooming policy of the Texas Department of Criminal Justice (TDCJ). Plaintiff Charlton Reed Tipton, an inmate previously incarcerated at TDCJ's Connally Unit (now incarcerated at the Telford Unit), initiated this action on January 1, 2021, by filing a *pro se* "Writ of Mandamus" and motion to proceed *in forma pauperis* (IFP) in the Corpus Christi Division of the Southern District of Texas, against Bobby Lumpkin, Director of TDCJ (hereinafter "TDCJ"). Tipton argued in the filing that he has been recognized by TDCJ as a Native American since 2005 and should be entitled to grow his hair for religious reasons like

1

other plaintiffs who have challenged the grooming policy in past cases filed in this district. Because the Connally Unit is located in the San Antonio Division of the Western District of Texas, the Southern District transferred the case to this Court on January 22, 2021, pursuant to 28 U.S.C. § 1404(a).

After transfer of this case, the District Court granted Tipton's motion to proceed IFP and construed his "Writ of Mandamus" as a civil complaint arising under 42 U.S.C. § 1983. TDCJ promptly filed a motion to dismiss, to which Tipton responded with a motion for leave to file an amended complaint and several motions for preliminary injunction. The District Court granted Tipton's motion, allowed him leave to file an amended pleading, dismissed TDCJ's motion to dismiss without prejudice, and indicated it would rule on the preliminary injunction motions at a later date. Tipton thereafter filed his Amended Complaint, which remains the live pleading in this action. (Am. Compl. [#30].) The Amended Complaint challenges the constitutionality of the grooming policy on First Amendment and other constitutional grounds and alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.* TDCJ filed a renewed motion to dismiss, and the District Court referred this case to the undersigned.[1]

Following the referral of the instant case, Tipton filed a *pro se* response to the motion to dismiss. (Resp. [#40].) The undersigned thereafter appointed Tipton counsel and entered a Scheduling Order, which included a deadline to allow appointed counsel additional time to file a motion for leave to amend pleadings. Counsel did not seek leave to further amend the pleadings.

---

[1] Tipton also filed a second civil rights action alleging that various TDCJ employees subjected him to excessive force in enforcing the grooming policy and engaged in retaliatory discipline in response to his opposition of the policy and filing of this lawsuit. This case was also transferred to this Court and is separately pending before the undersigned. *See Tipton v. Rayford*, 5:21-CV-493-FB-ESC.

The undersigned subsequently issued a report and recommendation on the motion to dismiss, recommending dismissal of all of Tipton's claims except for his claim under RLUIPA. The Court adopted the recommendation, and the undersigned set this case for a bench trial on Tipton's RLUIPA claim and referred this case for mediation before U.S. Magistrate Judge Richard B. Farrer.

Judge Farrer held a mediation on April 29, 2022, and the parties tentatively settled their dispute. Judge Farrer ordered the parties to file a stipulation of dismissal by May 31, 2022. On May 26, 2022, the parties filed a joint motion requesting additional time to file their dismissal papers, which the Court granted, extending the deadline to August 5, 2022. Several days later, counsel for Plaintiff received a letter from Plaintiff indicating he was no longer in agreement with the settlement and believed that he was coerced or misled into the settlement. The undersigned referred the case back to mediation and extended the deadline for filing the dismissal papers. The parties informed Judge Farrer that they had again reached a settlement they believed would work for all parties. The Court granted multiple extensions of time for the parties to file dismissal papers.

On October 4, 2022, the parties appeared through counsel at a status conference in Tipton's related case, 5:21-cv-493-FB-ESC. At the conference, the parties represented to the Court that the challenged policy is no longer in effect, a new policy is in effect, and TDCJ is now permitting Tipton to grow his hair long. The undersigned therefore issued a Show Cause Order, directing Tipton to show cause why this case should not be dismissed for lack of subject matter jurisdiction due to mootness. Tipton filed the ordered response on January 3, 2023 [#91], and TDCJ filed an additional response on January 26, 2023 [#95]. The undersigned now reviews this case for mootness.

## II.  Legal Standard

This Court is required to examine its subject matter jurisdiction *sua sponte*.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (internal quotation and citation omitted)).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation and citation omitted).

"If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Symczyk*, 569 U.S. at 72 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990) (internal quotation omitted)).  In other words, a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation and citation omitted).

However, as long as the parties "have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  "The test for mootness in cases such as this is a stringent one." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (internal quotation and citation omitted).  "A case is not rendered moot simply

because there is a possibility, or even a probability, that the outcome of a separate administrative proceeding may provide the litigant with similar relief." *El Paso Elec. Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (internal quotation and citation omitted). On the contrary, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

### III. Analysis

The Court should dismiss Tipton's case for mootness. The only cause of action remaining in this case is Tipton's claim that TDCJ's grooming policy violates RLUIPA seeking injunctive relief. RLUIPA, which concerns institutionalized persons, states the following:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). RLUIPA provides for a private right of action and implements a burden-shifting framework for enforcement that affords prisoners greater protections than those provided under the First Amendment. *See id.* § 2000cc–2(a); *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 410 (5th Cir. 2013).

A RLUIPA plaintiff must first show that (1) the relevant religious exercise is grounded in a sincerely held religious belief and (2) the government's action or policy substantially burdens that exercise by, for example, forcing the plaintiff to engage in conduct that seriously violates his

or her religious beliefs. *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (citing *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015)). If the plaintiff carries this burden, the government bears the burden of proof to show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a); *Holt*, 574 U.S. at 362–63.

Tipton's Amended Complaint alleges that TDCJ's grooming policy violates his rights under RLUIPA because it imposes a substantial burden on his ability to exercise his religious beliefs as a Native American. At the time Tipton filed his Original and Amended Complaints, SM-06.16 (revision 4), governed "Offender Grooming" and required male offenders to keep their hair "trimmed up the back of the neck and head." (Grooming Policy Version 4 [#91-1], at 3.) Hair was required to be "neatly cut" and "cut around the ears." (*Id.*) No exception was made for inmates to grow their hair long in keeping with their religious beliefs. The only relief Tipton seeks in this case is the right to grow his hair long in accordance with his religious beliefs.

After this lawsuit was filed, on May 10, 2022, TDCJ's grooming policy was revised to allow male inmates "who meet the eligibility requirements in this policy" to grow long hair. (Grooming Policy Version 5 [#91-1], at 8.) On June 1, 2022, the policy was revised again. (Grooming Policy Version 6 [#91-1], at 12.) The current version of the policy provides that "inmates who meet the eligibility requirements in this policy may grow long hair." (*Id.* at 13.) The policy further states that the following inmates are not eligible to grow long hair or a beard:

> A. Inmates who have received a security precaution designator for escape or attempted escape;
>
> B. Inmates who have been found guilty of a disciplinary offense for concealing contraband within the last five years; or

> C. Inmates who have been found guilty of a disciplinary offense for refusing a valid order to allow a search of the inmate's facial or long hair within the last two years.

(*Id.* at 15.) There are no other limitations on eligibility set forth in the policy. For those inmates choosing to grow their hair long, hair "may be worn in a single braid or ponytail that is easily removable for a search upon request," and "[l]ong hairstyles that make an inmate's hair difficult to search are not allowed." (*Id.* at 13.)

The declaration of Eric Guerrero, Deputy Division Director in the Correctional Institutions Division of TDCJ, is attached to TDCJ's response to the Court's Show Cause Order. (Guerrero Decl. [#95-1], at 2–3.) The declaration states that the policy change is in effect for the entire prison system. (*Id.* at 2.) Mr. Guerrero has reviewed the classification and disciplinary records for Tipton and concluded that he is eligible to grow his hair long and, in fact, currently wears long hair. (*Id.*)

TDCJ argues that due to the amendments to the policy, there no longer exists any live controversy under Article III and this case should be dismissed for lack of subject matter jurisdiction. Tipton argues to the contrary—that this case is not moot because the mere promulgation of a new policy does not render Tipton's claim moot because the policy is vague and only gives Tipton the right to apply for an "exception," not a guarantee that he will be permitted to grow his hair long consistent with his religious beliefs. Tipton cites the Supreme Court's recent decision in *Tucker v. Gaddis*, in which the Court rejected an argument for dismissal of a RLUIPA case based on mootness in a case against TDCJ regarding the right to hold religious gatherings. 40 F.4th 289, 292 (5th Cir. 2022). In *Tucker*, however, the new policy merely allowed the plaintiff to apply for a congregation; it did not allow his religious community to congregate. *Id.* at 290. Moreover, as of the date of the Supreme Court's decision, TDCJ had

7

not permitted the plaintiff and other adherents of his religion to congregate. *Id.* at 290–91. Nor was there any indication that TDCJ would allow them to do so anytime soon. *Id.*

This case is readily distinguishable from *Tucker*, as Tipton is currently permitted to grow his hair long under the amended grooming policy and is indeed growing his hair long. Although voluntary cessation of illegal activity through policy amendment or repeal does not always render a case or controversy moot, when a controversy has resolved to the point that there are no longer adverse parties, a court is without power to hear the case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009). Moreover, in the specific context of prison policies, the Fifth Circuit has "treat[ed] a voluntary governmental cessation of possibly wrongful conduct with some solicitude." *Id.* at 325. For example, numerous courts in the Fifth Circuit dismissed cases challenging TDCJ's grooming policy with respect to beards for mootness in light of a policy amendment allowing offenders with religious beards to grow and groom their beards, the very relief they were seeking through their suits. *See, e.g.*, *Johnson v. Collier*, No. 7:17-CV-00027-M-BP, 2018 WL 4084570 (N.D. Tex. July 27, 2018), *report and recommendation adopted*, No. 7:17-CV-00027-M, 2018 WL 4075802 (N.D. Tex. Aug. 27, 2018); *Wilson v. Livingston*, Civ. A. No. 3:16-CV-0188-Y-31, 2018 WL 2441786 (S.D. Tex. May 31, 2018); *Smith v. Collier*, Civ. A. No. 6:17-cv-073, 2018 WL 1148121 (E.D. Tex. Jan. 26, 2018), *report and recommendation adopted by* 2018 WL 1138554 (E.D. Tex. Mar. 1, 2018).

The record reflects that TDCJ has revised its grooming policy to allow all inmates, other than those who have attempted escape and have specific disciplinary histories, to grow their hair long. The record further reflects that Tipton does not fall into the category of inmates excluded from the long-hair policy. Finally, the record establishes that Tipton is indeed growing his hair long at this time. On these facts, this Court is "justified in treating a voluntary governmental

cessation of possibly wrongful conduct with some solicitude . . . ." *Sossamon*, 560 F.3d at 325. "Further, the fact that the change in policy is now state-wide obviates any concern that local prison officials might change their minds on a whim or that [Tipton] might be transferred to a facility with different rules." *Id.* If in the future circumstances transpire to demonstrate that the policy is being applied by TDCJ in a way that unduly burdens Tipton's religious rights, then Tipton could file a new lawsuit based on the new policy and those circumstances. As there is no longer a live case or controversy between the parties, the Court should dismiss this case for mootness.

## IV.  Conclusion and Recommendation

Having considered the live pleading in this case, the parties' show cause responses, and the governing law, the undersigned **recommends** that this case be **DISMISSED** for lack of subject matter jurisdiction due to mootness.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the

proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    SIGNED this 1st day of February, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE